UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JARED DION,

Plaintiff,

v.

IMPERVA, INC.,

Defendant.

CASE NO. 3:24-cv-05795-JHC

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## I
## INTRODUCTION

This matter comes before the Court on Defendant Imperva, Inc.'s Motion to Dismiss. Dkt. # 13. Plaintiff Jared Dion, a former Imperva employee, claims that Imperva unlawfully withheld commission payments. Imperva seeks dismissal under Federal Rule of Civil Procedure 12(b), contending that Dion fails to state a claim upon which relief can be granted. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, the Court GRANTS in part and DENIES in part Imperva's motion. And the Court GRANTS Dion leave to file an amended complaint.

## II
## BACKGROUND

The Court takes as true the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Imperva provides data security services. Dkt. # 13 at 2. In March 2021, Imperva provided Dion a written offer of employment as an Enterprise Account Manager, which included a base salary and commissions. Dkt. # 1 at 2, ¶ 16–17. The letter referred to a "sales commission plan," but did not include a separate document with the plan. *Id.* at 2, ¶ 18. Imperva told Dion that he could not review the "sales commission plan" before accepting his offer of employment because it contained "trade secrets." *Id.* at 2–3, ¶ 19. After Dion began working for Imperva in April 2021, Imperva provided him with the "FY2021 Plan Year Individual Commission Plan" (Individual CP). *Id.* at 3, ¶ 22. The Individual CP contained sales quota targets, commission calculations, and a link to a similarly named but separate document called the "FY2021 Imperva Commission Plan" (Imperva CP). *Id.* at 3, ¶¶ 23, 26. But the link to the Imperva CP did not work. *Id.* at 3, ¶ 26. Dion reviewed the Imperva CP at an unspecified "later date." *Id.* at 3, ¶ 27.

During his first year with Imperva, Dion's efforts led to three contracts for $9.9 million, $270,000, and $1,040,000. *Id.* at 4, 6, ¶¶ 35, 39, 59. Based on the Individual CP, Dion's commissions for each of these contracts should have been $891,396, $58,907, and $226,694, respectively. *Id.* at 4, 6, ¶¶ 37, 40, 60. But Imperva invoked a "windfall" provision from the Imperva CP that applies to large contracts and raised Dion's quota after he had met it. *Id.* at 4–5, ¶¶ 38, 42. Based on the windfall provision, Imperva reduced Dion's commissions and calculated his commissions as $318,463, $37,623, and $173,998 respectively. *Id.* at 5–6, ¶¶ 43–44, 61. In sum, Dion's commissions for 2021 were reduced by $646,913. *Id.* at 6, ¶ 62.

## III
## DISCUSSION

In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes all well-pleaded factual allegations as true and determines whether the complaint "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the Court draws all reasonable inferences in favor of Dion, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court may grant leave to amend a dismissed claim when it is possible that the claim can be cured with additional factual allegations. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016).

A. Piccini and Dion Declarations

For purposes of this Order, the Court considers the Declaration of Cama Piccini filed by Imperva in support of its motion. Dkt. # 14. Although a court ruling on a Rule 12(b)(6) motion may generally consider only the allegations in the complaint, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Piccini Declaration includes Imperva's letter offering Dion employment, the Individual CP, and the Imperva CP. Dkt. # 14. Because the complaint refers to these documents and Dion does not dispute their authenticity, the Court considers them. *See e.g.*, Dkt. ## 1 at 2–3, ¶¶ 16, 22; Dkt. # 15 at 2 (citing Dkt. # 14).

But the Court does not consider the Declaration of Dion filed in support of his response. Dkt. # 16. A court may consider "matters outside the pleadings" on a 12(b)(6) motion by treating the motion as one for summary judgment. Fed. R. Civ. P. 12(d). "Whether to convert a motion to dismiss is at the discretion of the district court," and "courts regularly decline to convert a motion to dismiss into one for summary judgment, particularly when the litigation is in the early stages." *Benton v. Exec. Hotel Seattle LLC*, 2021 WL 764135, at *3 (W.D. Wash. Feb. 26, 2021). Because no discovery has been conducted and Imperva objects to the Court's consideration of the Dion Declaration, Dkt. # 17 at 1, the Court declines to consider it.

B. Failure to Pay Wages

Dion adequately alleges claims under Washington's wage laws.[1] Dion says that Washington law prohibits Imperva from withholding or diverting part of his wages, Dkt. # 15 at 8 (citing RCW 49.48.010), or acting "willfully and with intent" to deprive him of part of his wages by paying him an amount lower than that obligated under "any statute, ordinance, or contract," *id.* citing (RCW 49.52.050). And Dion alleges that he is entitled to commissions of $891,396, $58,907, and $226,694 under the Individual CP.

To be sure, the Individual CP provides that it incorporates the Imperva CP, which would reduce his commissions. The Individual CP provides:

> By selecting "Accept" below, I acknowledge that I have received, understand and agree to the terms of my FY2021 Individual Commission Plan *which incorporates the FY2021 Imperva Commission Plan by reference*. I further acknowledge that Imperva management reserves the right to change the terms of the FY2021 Imperva Commission Plan from time to time at any time during the year. I understand that I will not earn the commissions specified on this schedule unless/until I have selected "Accept" of this form.

[1] The parties do not dispute that Washington law applies.

Dkt. # 14 at 26–27 (Exhibit 2) (emphasis added). But even if Dion were bound by the Imperva CP,[2] he plausibly alleges that Imperva did not follow the requirements of its windfall provision to reduce his commission for at least the $9.9 million contract.[3] The windfall provision states:

> The Compensation Committee will review quota and commission credit on any single deal with net bookings of greater than $2.5 million. As part of that review, the Company reserves the right to evaluate whether an unreasonable credit and/or commission (a windfall) would result under the Plan and the Individual Plan for the particular deal and to make an equitable adjustment to the quota and commission credit. If it is determined that an adjustment should be made, sales management will communicate with the impacted individual(s) about the equitable adjustment. Such review and adjustment will occur prior to the earning of any commission and, in all events, no later than thirty (30) days after the end of the expiration of the Plan Term and the Individual Plan.

Dkt. # 14 at 21 (Exhibit 2).

In sum, the windfall provision requires: (1) the Compensation Committee[4] to review the commission; (2) if an adjustment to the commission is to be made, communication to the relevant employee; (3) proper timing of review and adjustment of the commission. Dion contends that Imperva did not satisfy the first requirement. Although Dion alleges that Imperva told him that the Compensation Committee reduced his commissions, he also alleges, "Imperva did not convene, form, or conduct any Compensation Committee to discuss, evaluate, assess or consider Dion's commissions" and that "there were no Compensation Committee meetings, conversations, communications, or discussions to amend, adjust, or modify Dion's

---

[2] Dion suggests that the Individual CP did not incorporate the Imperva CP because the Individual CP's link to the Imperva CP was broken. *See* Dkt. # 15 at 10. But this fact is not enough for the Court to infer that Dion is not bound by the Imperva CP because he might have still reviewed it before agreeing to the Individual CP. He vaguely alleges that he "was not provided with nor provided an opportunity to review [the Imperva CP] *until a later date*." Dkt. # 1 at 3, ¶ 27 (emphasis added).

[3] It is unclear whether the windfall provision also applies to the other commissions. *See* Dkt. # 1 at 4, ¶ 40 ("Based on his Individual Commission Plan and the first $9.9 million transaction, Dion's commission on this second contract would be $58,907.").

[4] The Compensation Committee includes Imperva's Chief Revenue Officer, Chief Customer Officer, Chief Financial Officer, General Counsel, and Chief Human Resources Officer. Dkt. # 14 at 20.

commissions." Dkt. # 1 at 5, ¶¶ 48, 51–52. Imperva does not meaningfully contend otherwise.[5] At this stage, Dion has pleaded enough facts to state a claim that Imperva withheld wages he was entitled to under the Individual CP.

Thus, the Court denies Imperva's motion to dismiss the Washington wage statute claims.

C. Promissory Estoppel and Unjust Enrichment

Dion's promissory estoppel and unjust enrichment claims require asserting that the Individual CP is not a valid contract. *See Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 119 P.3d 854, 861 (Wash. Ct. App. 2005) ("[T]he doctrine of promissory estoppel does not apply where a contract governs."); *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) ("Unjust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it.") (emphasis added). Although Fed. R. Civ. P. 8(d)(2) allows pleading alternative claims, "pursuit of alternate relief does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request." *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1354 (W.D. Wash. 2014). "Thus, while a party can pursue inconsistent claims alleging both the existence and absence of an enforceable contract, a party cannot pursue a [promissory estoppel or] quantum meruit claim without pleading facts suggesting that the contract may be unenforceable or invalid." *Sierra View Loc. Health Care Dist. v. Influence Health, Inc.*, 2016 WL 2346799, at *6 (E.D. Cal. May 4, 2016); *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1267 (W.D. Wash. 2009) ("A claim for unjust enrichment may survive a motion to dismiss if a plaintiff challenges the validity of the contract.").

---

[5] Imperva says that because Dion was an at-will employee, it had discretion "to define and adjust compensation plans." Dkt. # 17 at 6. But Imperva does not explain when or how it amended the Imperva CP. And in any event, Imperva raises this assertion for the first time in its reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[D]istrict court[s] need not consider arguments raised for the first time in a reply brief.").

Because Dion does not allege enough facts to allow the Court to infer that the Individual CP is invalid, he fails to state promissory estoppel and unjust enrichment claims. *Cf. Kingston v. Int'l Bus. Machines Corp.*, 454 F. Supp. 3d 1054, 1060 (W.D. Wash. 2020) (considering as alternatives that there was a breach of contract and that there was no contract because the alleged facts and the agreement at issue supported both inferences). Dion signed the Individual CP and asserts that he is owed commissions based on its terms. Dkt. # 14 at 26–27 (Exhibit 2); *see, e.g.*, Dkt. # 1 at 4, ¶ 37. Dion contends that he did not agree to the Individual CP because it was not presented to him before he accepted his offer of employment. The offer letter, however, provided that his commissions would be paid "in accordance with the Company's then-current sales commission plan," Dkt. # 14 at 4 (Exhibit 1), and he subsequently accepted the Individual CP. Dion also might suggest that because he never agreed to the Imperva CP, *see supra* n.2, the Individual CP is also somehow invalid.[6] But without more factual allegations and briefing, these contentions are unclear.[7] Although Dion need not "allege precisely how the contracts between the parties might fail," he must allege enough for the Court to infer that he is not bound by the Individual CP. *Sierra View Loc. Health Care Dist.*, 2016 WL 2346799, at *7.

Thus, the Court dismisses the promissory estoppel and unjust enrichment claims without prejudice.

---

[6] Dion's other contentions about lack of mutual assent appear to be based on facts in the Dion Declaration, which, as discussed above in Section III.A, the Court does not consider. Dkt. # 15 at 9–10.

[7] Even if there were no contract, Dion does not allege enough facts for the Court to infer that Imperva promised him uncapped commissions. *Spectrum Glass*, 119 P.3d at 861 ("[P]romissory estoppel requires a promise."). Dion alleges, for example, that before accepting Imperva's offer of employment, "no Imperva representative told Dion that there was a cap on commissions." Dkt. # 1 at 2, ¶ 13. But without allegations that Imperva affirmatively suggested that Dion would be paid uncapped commissions, the Court cannot infer that Imperva made Dion such a promise.

## IV
## CONCLUSION

For these reasons, the Court GRANTS Imperva's motion to dismiss in part. The Court DISMISSES the promissory estoppel and unjust enrichment claims without prejudice. The Court DENIES Imperva's motion as to the Washington wage statute claims. The Court GRANTS Dion leave until May 12, 2025 to file an amended complaint.

Dated this 21st day of April, 2025.

John H. Chun
United States District Judge